UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                :

      - against -                        :

LUIS VALPAIS,                           :

            Defendant.            :

- - - - - - - - - - - - - - - - - -x

**MEMORANDUM DECISION**

05 Civ. 4373 (DC)
05 Civ. 4374 (DC)
96 Cr. 865 (DC)

**APPEARANCES:**   MICHAEL J. GARCIA, ESQ.
             United States Attorney for the
             Southern District of New York
                By:  Glen McGorty, Esq.
                     Assistant United States Attorney
             One Saint Andrew's Plaza
             New York, New York  10007

             LUIS VALPAIS a/k/a JOSE VASQUEZ
             Defendant Pro Se
             MCFP Springfield
             Medical Center/Federal Prisoners
             P.O. Box 4000
             Springfield, Missouri  65801

**CHIN, D.J.**

         Pro se defendant Luis Valpais[1] has filed two motions
pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his
sentence.  One was filed on September 19, 2005 and docketed in
Vasquez v. United States, No. 05 Civ. 4373 (DC).  That motion
challenges his conviction and sentence in a criminal matter
before the Honorable Michael B. Mukasey, United States v.
Vasquez, 96 Cr. 465 (MBM), and was reassigned to me.  The other

---

     [1]   Valpais was convicted in the underlying criminal matter
under the name Jose Vasquez.  During the proceedings in a
separate case before me, he requested that the Court's records be
changed to reflect his birth name, Luis Valpais.  I ordered the
change on May 16, 2000 and will use the name Luis Valpais
hereafter.

was filed on June 13, 2006 and docketed in <u>Vasquez v. United States</u>, No. 05 Civ. 4374 (DC), purportedly relating to an underlying criminal matter that was a separate case before me, <u>United States v. Maisonet</u>, No. 97 Cr. 817 (DC).  In fact, however, the second motion relates only to Valpais's conviction and sentence in the matter before Judge Mukasey.  Thus, the Court construes the June 13, 2006 motion as an amendment to the September 19, 2005 motion.[2]

Following a jury trial before Judge Mukasey, Valpais was convicted on two counts of murder in aid of racketeering, one count of conspiracy to murder in aid of racketeering, and one count of use of a firearm during and in relation to a crime of violence.  He was sentenced principally to life terms for each of the murders, 120 months for conspiracy to murder, and 60 months on the firearms charge, with the first three to be served concurrently.

For the reasons that follow, the motion, as amended, is denied.

## BACKGROUND

### A.   The Facts

On July 5, 1991, Felix Santiago, a/k/a "Felo," and his wife Cecilia Verdejo, a/k/a "Mamita," were shot to death in a car

---

[2]     Indeed, the June 13, 2006 motion is titled "Amended Section 2255 Motion."  Valpais advances two arguments in the June motion that do not appear in the September motion.  Because Valpais is proceeding <u>pro</u> <u>se</u>, his pleadings should be construed liberally, <u>see</u> <u>Phillips v. Girdich</u>, 408 F.3d 124, 127-28 (2d Cir. 2005), and the Court therefore addresses these grounds.

- 2 -

on Hunt's Point Avenue in the Bronx, New York.  Santiago and Verdejo ran a heroin distribution ring in Hunt's Point and sold heroin under the brand name "USA."  (Tr. 67-70).[3]  The murders were committed in retaliation for the victims' alleged robbery of their heroin supplier, who provided the money for the murders.  (Id. at 338).  Jose "Tito" Sanchez, a rival drug dealer who sold heroin under the brand "Too Hot to Handle," hired Valpais to commit the murders.  (Id. at 244, 318-21, 335).

At trial, several Government witnesses testified to Valpais's involvement in the murders of Santiago and Verdejo. Jose Serrano, a former drug dealer and bodyguard for Sanchez, testified that he accompanied Sanchez to negotiate payment for the murders with Valpais, whom Serrano knew as "China Man," on the same day that the murders took place.  (Id. at 317-21). Another former associate of Tito Sanchez, Kelvin Lyons, witnessed Sanchez paying Valpais for the murders.  (Id. at 470).  Following his arrest, Valpais confessed his involvement in the crime to a fellow inmate, Ricardo Nieves, who testified that Valpais admitted that he was hired by Sanchez to murder Santiago and Verdejo.  (Id. at 556).

---

[3]     References are as follows: "Tr." to the trial transcript in United States v. Vasquez, No. 96 Cr. 465 (MBM) (S.D.N.Y. 1999); "Sept. Mot." to Valpais's memorandum of law in support of his September 19, 2005 § 2255 motion; "June Mot." to Valpais's memorandum of law in support of his June 13, 2005 § 2255 motion; and "Siegel Tr." to the transcript of an ex parte conference between Judge Mukasey and Valpais's attorney, Martin J. Siegel, on December 3, 1998.

The Government also called several eyewitnesses to the shootings.  Maria Rosario, a former drug dealer who worked for the victims, was standing next to the car and speaking to Verdejo when the victims were shot.  (Id. at 79).  An undercover police officer also witnessed the shootings from a distance and chased Valpais, who was able to elude him.  (Id. at 25-26).  Additionally, immediately after the shootings, Kelvin Lyons saw Valpais running from the police, enter Lyons's apartment building, and later reemerge wearing different clothes.  (Id. at 463-67).

B.   **Prior Proceedings**

   1.   **Proceedings in this Court**

The indictment was filed on June 19, 1996.  A superseding indictment was filed on December 19, 1996, containing five counts.  Count One charged Valpais with conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5).  Counts Two and Three charged Valpais with committing the murders of Santiago and Verdejo in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1).  Count Four charged use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).  Count Five charged Valpais with possessing ammunition in, and affecting, interstate commerce while having a prior felony conviction, in violation of 18 U.S.C. § 922(g).

Valpais sought to introduce at trial statements made by an individual named Robert Ayala as exculpatory evidence.  Ayala was arrested on July 13, 1991 -- eight days after the murders of

- 4 -

Santiago and Verdejo -- for a minor theft offense.  (Gov't Letter of 5/11/98 at 1, 2).[4]  In an apparent attempt to avoid being charged after his arrest, Ayala provided information to the police about the murders.  (Id. at 2).  In a videotaped statement, Ayala admitted to soliciting a man named "Al" to kill Santiago and Verdejo on behalf of a man named "Cano," and to having witnessed "Al" commit those murders.  (Id. at 1).  The Bronx District Attorney's Office prosecuted Ayala for conspiracy to commit murder based primarily on the taped confession.  (Id.).  Before Ayala's trial, prosecutors advised the court and defense counsel that "Al," the gunman identified by Ayala, had been murdered on July 14, 1991.  (Id.).

        The Government supplied Valpais's attorney, Martin J. Siegel, with copies of Ayala's statement and trial transcript, as well as a notice regarding Ayala's then-location.  (Id.).  The Government also notified Siegel that Ayala made statements to the police after his conviction that contradicted his videotaped statement.  (Id. at 1-2).  Those statements consisted, in substance, of Ayala's identification of Valpais, and not "Al," as the gunman who murdered Santiago and Verdejo.  (Id.).

        At a pretrial conference on May 28, 1998, Judge Mukasey granted Siegel permission to depose Ayala, and in an Order dated June 4, 1998, permitted Valpais to attend the deposition.  For unknown reasons Valpais elected not to proceed with the

---

        [4]   The Government submitted this letter in support of its motion in limine to preclude Valpais from introducing evidence relating to Ayala.

deposition, and Siegel so advised the Court on June 8, 1998.
(See Order dated 6/9/98). Almost six months later, Valpais
changed his mind and requested that Ayala be produced as a
defense witness at trial. (Siegel Letter to Court dated
12/2/98). Siegel advised the Court that he had interviewed Ayala
for four hours and informed Valpais of the "sum and substance" of
that discussion, "but nevertheless" Valpais wanted Ayala to
testify at trial. (Id.).

On December 3, 1998, Siegel had an ex parte conference
with Judge Mukasey, without Valpais present, to discuss the Ayala
issue. Based on his interview, Siegel advised the Court that
Ayala would testify that it was Valpais who committed the
murders. (Siegel Tr. at 4). The Court reminded Siegel that the
decision to call Ayala as a witness belonged to counsel, not
Valpais. (Id. at 2-3, 5-10). During the trial, which took place
from January 4 through January 11, 1999, Valpais delivered a
handwritten note to the Court expressing his desire to call Ayala
either as a defense witness or a hostile witness, claiming that
Ayala's testimony would serve to exculpate him. (Def.'s Letter,
docket entry # 68).[5] Ultimately, Ayala was not called as a
witness.

At trial, Valpais elected to forego his right to
testify. He confirmed in Court that Siegel had fully apprised
him of his rights to call witnesses and testify on his own

_____

[5]    Defendant claims to be illiterate and it is not known
whether he wrote this letter or it was done by someone else on
his behalf.

behalf.  (Tr. 688-89).  The defense rested without calling any of its own witnesses.  (Id. at 689).  The jury convicted Valpais on Counts One, Two, Three, and Four.  Count Five was severed for trial and dismissed after Valpais's conviction on the other counts.

On December 17, 1999, Valpais was sentenced to life imprisonment followed by a consecutive five-year term, five years' supervised release, and the mandatory special assessments.

### 2.   **The Appeal**

With Siegel as his counsel, Valpais filed a notice of appeal to the United States Court of Appeals for the Second Circuit on December 21, 1999.  Oral argument was held on June 29, 2000, and on September 26, 2001, the Second Circuit affirmed Valpais's conviction.  See United States v. Vasquez, 267 F.3d 79 (2d Cir. 2001).

Among other things, Valpais argued that his conviction should be reversed because the jury instruction on the VCAR charges directed the verdict with respect to an essential element of the offenses -- whether the racketeering activity, if it were found, had an effect on foreign or interstate commerce.  (Tr. 786-87).  Over Valpais's objection, Judge Mukasey had instructed the jury "that either heroin or cocaine trafficking necessarily involves foreign commerce, because the raw materials for these substances originate outside the United States."  (Id. at 787).

While expressing concern about the challenged instruction as a possible encroachment on the role of the jury,

the Second Circuit held that the instruction did not rise to the level of plain error.  Id. at 89-90.  The court found that Valpais's objection at trial to the jury instruction was insufficiently specific to properly preserve the objection on appeal, and considered Valpais to be "assert[ing] on appeal a different objection to the charge than he advanced below."  Id. at 87.

Valpais petitioned the Supreme Court for a writ of certiorari, which was denied on February 19, 2002.  See Vasquez v. United States, 534 U.S. 1148 (2002).

## C.   **The Instant Motions**

On April 15, 2005 Valpais filed a motion seeking leave to file a § 2255 motion challenging both his sentence imposed by Judge Mukasey in Vasquez (docketed in 05 Civ. 4373) and the sentence imposed by me in Maisonet (docketed in 05 Civ. 4374). On May 4, 2005, Judge Mukasey ordered Valpais to file two separate § 2255 motions.  After delays in delivering Court communications to Valpais on account of his change in name, the Court received Valpais's September 19, 2005 § 2255 motion challenging his conviction and sentence in the Vasquez matter. By Order dated December 4, 2006, the Honorable Barbara S. Jones, to whom the motion was originally reassigned, ordered the Government to file an answer to the motion.  By letter dated January 12, 2007, the Government responded, arguing that Valpais's motion should be denied as untimely.

Having received no § 2255 motion challenging the conviction and sentence in the matter before me, the Court dismissed the 05 Civ. 4374 action on October 25, 2005.  By Order dated January 9, 2006, Judge Mukasey reopened the case after Valpais filed a petition for reconsideration.  After a delay caused by his transfer to another facility, Valpais filed his June 13, 2006 § 2255 motion.  As noted, however, the content of the motion relates solely to Valpais's conviction and sentence before Judge Mukasey.  Because I find that "it plainly appears from the face of the [section 2255] motion . . . and the prior proceedings in the case that [Valpais] is not entitled to relief," I did not order the Government to file an answer to the June 13, 2006 motion.  See Rules Governing Section 2255 Proceedings for the U.S. Dist. Courts 4(b); Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000).  As noted, I construe the June 13, 2006 motion as an amendment to the September 19, 2005 motion and treat the two as one motion.

## DISCUSSION

Valpais raises several claims in his motion, each of which will be addressed in turn.  As a preliminary matter, Valpais acknowledges that his motion may be untimely, but argues that the applicable statute of limitations should be equitably tolled.

## A.  Equitable Tolling

As grounds for equitable tolling, Valpais cites his his mental incapacity, his illiteracy, his poor mental health,

and the alleged failure of his attorney to inform him of his right to file a § 2255 motion.  (Sept. Mot. at 3, 10-11; June Mot. at 8-9).  Valpais's arguments in this respect are without merit.

####    1.    **Applicable Law**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a defendant has one year to file a motion to "vacate, set aside or correct [his] sentence."  28 U.S.C. § 2255. Except in circumstances inapplicable here, AEDPA's limitation period commences on "the date on which the [movant's] judgment of conviction becomes final."  Id.  A judgment of conviction becomes final when the Supreme Court denies a petition for a writ of certiorari.  Clay v. United States, 537 U.S. 522, 527 (2003) (citations omitted).

In certain circumstances, a court may excuse a defendant's delay in filing a motion pursuant to 28 U.S.C. § 2255 under the doctrine of equitable tolling.  See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (habeas petition brought pursuant to 28 U.S.C. § 2254).[6]  The one-year limitations period is

_____

[6]    The Supreme Court has noted that it has "never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations."  Pace v. DiGuglielmo, 544 U.S. 408, 418 n.8 (2005) (comparing Pliler v. Ford, 542 U.S. 225 (2004)).  Along with every other circuit that has addressed the question, the Second Circuit has held that the AEDPA filing limitation is subject to the doctrine of equitable tolling.  See Smith, 208 F.3d at 17; Dunlap v. United States, 250 F.3d 1001, 1004 n.1 (6th Cir. 2001) (listing circuit court cases holding that equitable tolling applies to AEDPA cases).

subject to equitable tolling only in "rare and exceptional circumstance[s]." Id. (quoting Turner v. Johnson, 177 F.3d 390, 391-92 (5th Cir. 1998)).  The Supreme Court has cautioned that the doctrine of equitable tolling should be used "only sparingly" and not in cases involving "garden variety claims of excusable neglect." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).[7]

To equitably toll the one-year period of limitations, the party seeking to rely on the doctrine bears the burden of establishing two elements: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way. Pace, 544 U.S. at 418 (citing Irwin, 498 U.S. at 96). These requirements are to be strictly construed. Barbosa v. United States, No. 01 Civ. 7522, 2002 WL 869553, at *2 (S.D.N.Y. May 3, 2002).

To establish extraordinary circumstances, the party seeking equitable tolling must support his allegations with evidence; he cannot rely solely on personal conclusions or assessments. See Mendez v. Artuz, No. 99 Civ. 2472, 2000 WL 991336, at *2 (S.D.N.Y. July 19, 2000) (stating that conclusory

---

[7]    Although Irwin was an employment discrimination case, the same doctrine of equitable tolling has been applied in habeas cases as in other civil cases. See, e.g., Pace, 544 U.S. at 418 (citing Irwin, 498 U.S. at 96, in its analysis of habeas petitioner's argument for equitable tolling); Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (quoting Smith, 208 F.3d at 17, a case involving a habeas petitioner, in its decision affirming the district court's refusal to equitably toll EEOC filing deadline).

allegations do not satisfy high burden required to justify tolling).  Further, the party must show that he was unable to pursue his legal rights during the entire period that he seeks to toll.  <u>Barbosa</u>, 2002 WL 869553, at *3.

    **2.  <u>Application</u>**

      In the instant case, Valpais's petition for a writ of certiorari was denied on February 19, 2002.  <u>Vasquez</u>, 534 U.S. 1148.  Valpais had one year from that date to file a motion under § 2255 challenging his sentence.  Valpais first notified the court of his intention to file a § 2255 motion on April 15, 2005, seeking leave to file the motion because he believed it was untimely.  The first of these motions was filed on September 19, 2005, over two and a half years after the deadline.

      Valpais has not demonstrated any extraordinary circumstances warranting equitable tolling.  First, ignorance of the law is not "extraordinary" in the sense required by the equitable tolling doctrine.  <u>Ahmeti v. United States</u>, No. 04 Civ. 10207, 2006 WL 2528464, at *2 (S.D.N.Y. Aug. 31, 2006) (quoting <u>Barrow v. New Orleans S.S. Ass'n</u>, 932 F.2d 473, 478 (5th Cir. 1991)).  Ignorance of the law cannot form the basis for equitable tolling even if a result of the petitioner's illiteracy.  <u>Huang v. United States</u>, No. 03 Civ. 3755, 2003 WL 22272584, at *2 (S.D.N.Y. Oct. 2, 2003) (quoting <u>Turner v. Johnson</u>, 177 F.3d 390, 392 (5th Cir. 1999)).

      Valpais has also failed to justify equitable tolling on account of his mental health issues.  To toll the statute of

limitations based on mental impairment, a petitioner must make more than a "conclusory and vague claim," that includes "a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights . . . ." Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).  Valpais points to his "history of severe psychiatric . . . problems" (Sept. Mot. at 10), and "being mentally unsound" (Jun. Mot. at 8) in support of his claim. Without more, these statements are merely conclusory and fail to demonstrate Valpais's mental incapacity.  Indeed, Valpais was examined by three doctors and adjudged competent to stand trial. Elsewhere in his motion, Valpais alleges that he was "heavily medicated and under the influence of psychotropic medications" from "March 2002 until 2005." (Sept. Mot. at 3).  But the fact that Valpais was treated with mood-altering drugs does not relieve him of the burden to demonstrate an inability to pursue his rights during the period requested to be tolled.  See Jean-Louis v. Greiner, No. 02 Civ. 6326, 2003 WL 1807144, at *3 (S.D.N.Y. Apr. 4, 2003); see also Cannon v. Kuhlmann, No. 99 Civ. 10101, 2000 WL 1277331, at *2 (S.D.N.Y. Sept. 7, 2000) (medical treatment of a low-intelligence, learning disabled petitioner with psychiatric drugs insufficient to justify tolling).  Having failed to specifically allege how his mental condition and medical treatment prevented him from filing this motion in a timely fashion, Valpais may not benefit from equitable tolling on these grounds.

Valpais also argues for tolling the statute of limitations on the ground that his attorney failed to inform him of the possibility of filing a § 2255 motion.  (Jun. Mot. at 8-9).  Even assuming that Siegel was somehow negligent in failing to inform Valpais of his rights under § 2255, mere attorney negligence is not a basis for equitable tolling.  See Torres v. Barnhart, 417 F.3d 276, 283 (2d Cir. 2005) (citing Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (per curiam)); Baldayaque v. United States, 338 F.3d 145, 151-52 (2d Cir. 2003) (attorney's misconduct must be outrageous or egregious to render it extraordinary).  Furthermore, Valpais has not shown that he acted with reasonable diligence in pursuing his claim during the time he seeks to toll.  Accordingly, no basis exists for equitable tolling, and Valpais's motions are time-barred.

**B.   The Merits**

Even assuming Valpais's motions were timely, they must be denied on the merits.  Valpais advances three substantive claims.  First, Valpais contends that the Government violated his due process rights by knowingly using false testimony to convict him.  Second, Valpais contends that he received ineffective assistance of counsel.  Third, Valpais contends that his sentence was imposed in violation of his Sixth Amendment rights as articulated in United States v. Booker, 543 U.S. 220 (2005) and Apprendi v. New Jersey, 530 U.S. 466 (2000).

I address each of Valpais's claims in turn.

- 14 -

1.   **Knowing Use of False Testimony**

Valpais argues that the Government violated his due process rights in two respects.[8]  First, Valpais claims that the Government "knowingly used false testimony" to secure his conviction.  (June Mot. at 3-5).  Second,  Valpais contends that the Government's use of a theory at trial that was inconsistent with the facts used to convict Ayala violated his due process rights.  (Id. at 6-7).

The Fifth Amendment due process clause prohibits a prosecutor from knowingly using false testimony.  United States v. Boothe, 994 F.2d 63, 68 (2d Cir. 1993).  Such prosecutorial deception of the court and jury is "incompatible with 'rudimentary demands of justice.'"  Giglio v. United States, 405 U.S. 150, 153 (1972) (citing Mooney v. Holohan, 294 U.S. 103, 112 (1935)).  A conviction obtained on the basis of such testimony cannot stand if the evidence "'could . . . in any reasonable likelihood have affected the judgment of the jury.'"  Giglio, 405 U.S. at 154 (quoting Napue v. Illinois, 360 U.S. 264, 271 (1959)); United States v. Agurs, 427 U.S. 97, 103 (1976).  To set aside a conviction on that basis, a petitioner must show that (1) false testimony was introduced, (2) which the prosecution knew or should have known to be false, (3) the testimony went uncorrected, and (4) the testimony was prejudicial to defendant

---

[8]     Although neither of his motions state so specifically, I assume that Valpais is invoking his due process rights under the Fifth Amendment.

as defined in Giglio and Agurs.   Shih Wei Su v. Filion, 335 F.3d
119, 127 (2d Cir. 2003).

  With respect to the first aspect of this claim, Valpais
argues that because the Government knew that Ayala was convicted
on an alternate set of facts, the testimony of the Government's
witnesses -- the one eyewitness to the crime (Rosario), the
witness who saw Valpais being paid for the murders (Lyons), and
the witness to whom Valpais confessed responsibility for the
killings (Nieves) -- must have been "manufactured by coercion and
inducements." (Jun. Mot. at 4).   I reject this argument.
Valpais has produced no evidence to support his contention that
he was convicted on the basis of testimony that the Government
knew or should have known to be false.

  Valpais also contends that the Government violated his
due process rights by prosecuting him using facts that were
different than those under which Ayala was convicted.   The fact
that two verdicts are inconsistent (assuming they are) does not
suffice, on its own, to have a guilty verdict set aside.   Harris
v. Rivera, 454 U.S. 339, 345 (1981).   In jury trials, this
proposition applies to verdicts returned on different charges
against one defendant, Dunn v. United States, 284 U.S. 390
(1932), as well as to inconsistent verdicts against co-
defendants.   United States v. Dotterweich, 320 U.S. 277 (1943).
In Dunn, Justice Holmes stated that while "[a] verdict may have
been the result of compromise, or of a mistake on the part of a
jury . . . . verdicts cannot be upset by speculation or inquiry

into such matters." Dunn, 284 U.S. at 394.  Thus, "[a]s long as a conviction is the result of a fair trial at which legally sufficient evidence has been adduced, its inconsistency with another verdict does not create a constitutional defect." Billups v. Costello, No. 91 Civ. 6296, 1992 WL 170650, at *4 (S.D.N.Y. July 6, 1992) (citing Harris, 454 U.S. at 344).

Here, Valpais has challenged neither the fairness of his trial nor the legal sufficiency of the evidence presented against him.  Indeed, in his second petition Valpais concedes that "the evidence presented at [his] trial was sufficient to support his conviction." (Jun. Mot. at 5).  Furthermore, the fact that the two prosecutions were brought by separate prosecuting entities (the State of New York on one hand and the federal government on the other) mitigates any qualms that might arise were two defendants to be convicted by the same prosecutor. Finally, although Ayala had given two versions of the scheme, in one version he identified Valpais as the gunman.  Valpais's claim of a due process violation is without merit.

## 2.   Ineffective Assistance of Counsel

Valpais asserts that he received ineffective assistance of counsel in three respects: (1) Siegel failed to object to the jury instruction regarding the interstate or foreign commerce element of the VCAR offenses; (2) Siegel failed to present evidence that Ayala was convicted and incarcerated for his involvement in the same murders; and (3) Siegel failed to object

- 17 -

to the Government's use of a theory that was "inconsistent" with Ayala's conviction.

To prevail on his claim of ineffective assistance of counsel, Valpais must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) he was prejudiced by counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 686-88 (1984). When applying the Strickland test, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "The court's central concern is not with 'grad[ing] counsel's performance,' . . . but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696). Furthermore, "actions or omissions that 'might be considered sound trial strategy' do not constitute ineffective assistance" of counsel. United States v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999) (quoting Strickland, 466 U.S. at 689). Valpais claims that he was denied effective assistance of counsel on three grounds, which will be discussed in turn.

First, with respect to Siegel's alleged failure to object to the jury instruction on the interstate/foreign commerce element of the VCAR offenses, Valpais challenged this very instruction on appeal to the Second Circuit. See Vasquez, 267

F.3d at 79.  While Siegel made a general objection to the jury
instruction (Tr. at 698), the Second Circuit found that
"[d]efense counsel did not specifically argue that the charge
impermissibly removed an element from the jury." Id. at 87.  The
Second Circuit, however, affirmed the conviction.  The court
found that the possible prejudicial effect was mitigated by the
district court's instructions that the Government had to prove
beyond a reasonable doubt the existence of an organization that
was involved in activities effecting interstate or foreign
commerce. Id. at 89.  Thus, even assuming arguendo that Siegel
acted unreasonably in failing to specifically object to the jury
instruction, Valpais has failed to prove actual prejudice under
the second prong of Strickland.  This aspect of his claim is
denied.

        Second, Valpais contends that Siegel was ineffective
for failing to present evidence that Ayala was convicted on a
different set of facts for his involvement in the same murders.
This contention is without merit.  Before the trial, Siegel
arranged to depose Ayala with Valpais present, and the deposition
was only cancelled on Valpais's request.  After Valpais later
reconsidered, Siegel interviewed Ayala and informed his client
that Ayala's putative trial testimony would serve to incriminate
Valpais.  As Judge Mukasey stated during his ex parte conference
with Siegel, the decision whether or not to call Ayala to testify
belonged to Siegel as a matter of trial strategy.  (See generally
Siegel Tr.).  If anything constitutes the type of "sound trial

strategy" that precludes a finding of ineffective assistance, it is the decision of a defense attorney to refrain from calling a witness who promises to inculpate the defendant.  See Berkovich, 168 F.3d at 67.  Siegel's decision not to call Ayala as a witness does not rise to a violation of Valpais's constitutional right to adequate counsel.

Third, Valpais contends that Siegel failed to object to the Government's use of a theory of the case contrary to the set of facts used to convict Ayala.  As previously discussed, an inconsistent conviction is constitutionally permissible so long as the defendant enjoys a fair trial and is convicted based on legally sufficient evidence.  Billups, 1992 WL 170650, at *4. Because Valpais's due process claim is meritless, his claim that counsel was ineffective in this respect is also meritless and must be denied.

### 3. Sixth Amendment Rights under Apprendi and Booker

Valpais argues that his sentence was imposed in violation of Apprendi and Booker.  As Valpais apparently concedes, however, Booker is not retroactively applicable to motions under 28 U.S.C. § 2255.  (Sept. Mot. at 8).  See Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005) (Booker not retroactive to cases on collateral review where defendant's conviction was final as of January 12, 2005).  Instead, Valpais relies on the Supreme Court's holding in Apprendi -- that other than the fact of a prior conviction, any fact increasing the penalty for a crime beyond the statutory maximum must be proven

to a jury beyond a reasonable doubt.  530 U.S. at 2362-63.
Valpais alleges that his base offense level was impermissibly
enhanced by factors not proven to the jury beyond a reasonable
doubt.  (Sept. Mot. at 8).  Nowhere in the motions, however, does
Valpais explicate what these purportedly unconstitutional factors
were.  Instead, Valpais makes the conclusory (and erroneous)
statement that "the sentence of life in excess of the authorized
statutory maximum allowable under the Sixth Amendment."  <u>Id.</u>

The jury found Valpais guilty on Counts Two and Three
under 18 U.S.C. § 1959(a)(1), each of which are punishable by
life imprisonment.  Valpais was also found guilty on Count One,
which provides for a sentence of up to ten years, 18 U.S.C. §
1959(a)(5), and on Count Four, which provides for a minimum of
five years' imprisonment.  18 U.S.C. § 924(c).  Thus, in
sentencing Valpais to life in prison plus five years, Judge
Mukasey acted within the statutory requirements of the offenses
for which the jury found Valpais guilty.  Valpais's sentence did
not include punishment beyond the statutory maximum that would
implicate his Sixth Amendment rights under <u>Apprendi</u>.
Accordingly, his challenge to the sentence must be denied.

### CONCLUSION

For the reasons set forth above, Valpais has failed to
demonstrate any basis for relief under 28 U.S.C. § 2255.  His
motion is therefore denied.  Because Valpais has not made a
substantial showing of the denial of a constitutional right, I
decline to issue a certificate of appealability.  <u>See</u> 28 U.S.C.

§ 2255 (1996) (as amended by the Antiterrorism and Effective Death Penalty Act).  I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall close these cases.

SO ORDERED.

Dated:    New York, New York
          July 10, 2007

                                        DENNY CHIN
                                        United States District Judge

- 22 -